RADKE, Respondent, vs. M. WINTER LUMBER COMPANY and another, Appellants.

*April 24—May 13, 1902.*

*Setting aside judicial sale: Laches: Foreclosure of lien.*

In an action to set aside a sheriff's deed it appeared that plaintiff had contracted for the purchase of the land and had made payments; that a lien for building materials furnished to him was foreclosed, after a contest, and the judgment directed a sale of his interest in the land; that his attorney, not being informed that plaintiff had any interest in the property, in good faith advised him that the lien was invalid, but the lienor did not know of such advice; that nearly two years later plaintiff had a conversation with the lienor relative to a settlement, but no agreement to delay enforcement of the judgment was made; that soon after the land was advertised and sold pursuant to the judgment; that notice of motion to confirm the sale was given to plaintiff's attorney, but he, still supposing plaintiff had no interest, did not notify the latter; and that the sale was duly confirmed. *Held*, that plaintiff had been guilty of laches and was not entitled to relief.

APPEAL from a judgment of the circuit court for Sheboygan county: MICHAEL KIRWAN, Circuit Judge. *Reversed.*

In September, 1893, the plaintiff purchased lot 11, block 159, of the city of Sheboygan, under a land contract. Payments were to be made during a series of years, the last one being due January 16, 1899. Plaintiff entered into possession of the property, and made certain improvements thereon. He purchased building materials from the defendant *M. Winter Lumber Company,* and failed to pay for them. The defendant filed its lien, and brought a suit to foreclose. The plaintiff appeared in the action, and judgment was finally entered for the company on May 21, 1897, for $366.28 and costs, which was declared to be a lien upon the interest plaintiff had in the premises on September 14, 1893, or had since acquired. A sale of the interest of plaintiff in the premises was directed in case said sum, costs, and interest were not

paid. No proceedings to collect the judgment were taken until 1899. The property was duly advertised for sale, commencing in January, 1899, a sale was had on March 20th of that year, and the premises were bid off by the judgment creditor for the amount due on the judgment and costs of sale. Notice of a confirmation of the sale was given the plaintiff's attorney, and the sale was duly confirmed on April 29, 1899, and a deed duly executed to the purchaser. On May 13, 1899, the company sold the premises to the defendant *Cudahy Bros. Company*, giving them a bond to perfect the title. In the meantime plaintiff paid the balance due on the land contract, and had the title conveyed to one A. G. Bechaud as security for a loan on December 23, 1898. June 17, 1899, Bechaud conveyed the property to plaintiff.

On June 20, 1899, the plaintiff commenced this action to set aside the deed from the sheriff to the *M. Winter Lumber Company* and the deed from the latter to the *Cudahy Bros. Company*. The grounds of plaintiff's cause of action sufficiently appear from the findings, without a statement of the allegations of the complaint. The defendant lumber company justified under its judgment and the sale thereunder. The court made findings in favor of plaintiff, which, so far as relate to the plaintiff's right to set aside the deeds in question, may be briefly stated as follows: Plaintiff was advised by his attorney, D. T. Phalen, who was acting in good faith, that the judgment obtained in the proceedings to foreclose the company's lien was null and void, and he believed such advice was correct. About February 15, 1899, plaintiff had a conversation with Arthur F. Winter, defendant's president, and made him a proposition for the discharge of the lien judgment for some amount less than its face, and it was then understood that Winter should consult with the stockholders of the company relative to the acceptance or rejection of the plaintiff's proposition, and would notify plaintiff of their conclusion, "and that in the meantime, and until said presi-

dent should give to the plaintiff the information so agreed to be given him, no further costs should be made and no further steps should be taken upon said judgment." The company and its president failed to give plaintiff any notice as agreed, and in violation of its agreement, and without any actual notice to him, sold the property under their judgment. Plaintiff was misled to his detriment by not receiving notice of the acceptance or rejection of his proposition, in that the sale was made at a time when he understood it would not be made, and he was thereby prevented from securing, as he might otherwise have done, a much higher bid at the sale. The court further finds that timely notice of the confirmation of the sale was given his attorney, but plaintiff was not informed of it. A tender of the amount of the lien, judgment, and costs was made June 3, 1899, and the money was paid into court.

A judgment was entered setting aside the deeds mentioned, from which the defendants have taken this appeal.

*Paul T. Krez,* for the appellants.

For the respondent there was a brief by *Duffy & McCrory,* and oral argument by *J. H. McCrory.*

BARDEEN, J. Plaintiff has no right to have the deed on the lien foreclosure sale set aside, unless it clearly appears that he was deceived and misled by the acts of the defendant lumber company. The fact that the plaintiff was advised and believed that the lien judgment was invalid can have no significance, as it is not shown that the officials of the lumber company had any knowledge of that fact. The plaintiff was guilty of the grossest laches. The lien judgment was obtained in May, 1897, after a contest. His attorney testifies that he advised him the lien was invalid because he did not suppose or know that plaintiff had a dollar's worth of interest in the property upon which the lien was claimed. If that was a fact, of course there was nothing to which the lien might

attach. At that time plaintiff had a land contract with the owner, upon which payments had been made. Presumably the plaintiff failed to inform his attorney of the true situation. He waited nearly two years after judgment before doing anything. He then approached defendant with a proposition to pay a portion of the judgment. His testimony regarding the talk with Mr. Winter is brief, and is as follows:

"I told him under the circumstances that I hadn't ought to be compelled to pay the costs and interest up to date, and Mr. Winter answered me in this way: that he couldn't do anything himself; he would see the company, and let me know." "I made him several propositions, and he said he couldn't do anything, except everything in full, until he saw the company. That is what he said to me, and he would write me and notify me what the company would do." "The last word I said to Winter was on the 15th of February. I says, 'Arthur, don't make any more costs; whatever you do, let me know.' He said he would."

He testified, further, that he received no word from the company. Mr. Winter expressly denied that he was to take the proposition under advisement. He informed plaintiff that he would not accept anything less than the face of the claim and interest, and that if the stockholders of the company felt disposed to give him anything he would let him know. On the same day he wrote plaintiff a letter. The sale took place on March 20, 1899. On March 29th personal notice of motion to confirm the sale was served on plaintiff's attorney, and on April 29th the sale was duly confirmed. In the meantime plaintiff did not exercise the slightest vigilance. Apparently he was resting secure in the belief that the lien judgment was invalid. As we have already seen, his belief in that regard was founded upon his failure to inform his attorney of the real status of his title. His attorney failed to notify him of the application to confirm the sale because he did not suppose plaintiff had any interest in the property. The notice to his attorney was notice to him. More than a

month elapsed after the sale before it was confirmed. The sale was duly advertised, proper notice of the several steps given, and ample opportunity offered for plaintiff to protect his rights. The trial court found that the various proceedings were regularly taken, and then declared that the company violated its agreement that no further costs should be made and no further steps taken by it until it should give plaintiff information whether it would accept less than the amount due on the judgment in satisfaction. The difficulty with this finding is that the evidence entirely fails to support it. There is absolutely no evidence in the case of an agreement to delay proceedings on the judgment. Admitting all that plaintiff says as to the conversation with Mr. Winter to be true, it fails entirely to sustain the finding. If the plaintiff has suffered loss or sustained a hardship, he has only himself to blame. In absence of any evidence showing that he has been misled, deceived, or overreached by the defendant, he is not entitled to relief. We find no such evidence in the record, and must therefore reverse the judgment.

*By the Court.*—The judgment is reversed, and the cause is remanded with directions to enter judgment for the defendants dismissing the complaint.